Juan G. OLIVAREZ, Appellant,

v.

TEXAS EMPLOYERS' INSURANCE
ASSOCIATION, Appellee.

No. 706.

Court of Civil Appeals of Texas,
Corpus Christi.

Sept. 14, 1972.

Rehearing Denied Oct. 12, 1972.

Second Rehearing Denied Nov. 16, 1972.

Allison, Maddin, White & Brin, Raul Garcia, Corpus Christi, for appellant.

Dyer, Redford, Burnett, Wray, Woolsey & Dunham, George G. Brin, Corpus Christi, for appellee.

OPINION

NYE, Chief Justice.

This is a workmen's compensation case. Judgment was rendered on the jury's verdict in favor of the claimant for an injury to his left foot. The claimant appeals in a series of points of error contending that the answers to the jury issues are against the great weight and preponderance of the evidence.

The claimant alleged that on May 28, 1970, while working for the Petty Construction Company as a laborer, he sustained compensable accidental injuries to his left

foot and low back, resulting in total and permanent general disability. The claimant was injured while tightening a nut with a wrench while standing on it. The wrench penetrated the sole of his boot causing a puncture-type wound.

The evidence shows that immediately following the claimant's injury, he received treatment at Memorial Hospital in Corpus Christi. The doctor treated the wound, placed him on crutches and prescribed medication. The treating physician was authorized to administer and treat the claimant by the appellee insurance company. Thereafter, the treating doctor referred the claimant to an orthopedic surgeon who saw him for the first time on June 19, 1970. The orthopedic surgeon examined the claimant in the hospital. The doctor testified that the claimant had no real trouble with body movements. He further testified that based on x-rays taken, there was some evidence of degeneration in his back. With regard to his foot the doctor testified that the swelling and pain raised a problem known as reflex dystrophy of the foot. At the same time he thought that it might also represent a low grade infection contained in the foot.

Later, the claimant became sick and was sent to the hospital by an adjuster for the insurance company. He was examined by still another doctor upon referral from his original treating physician. He told the latter doctor that he was dissatisfied with his original doctor. This doctor x-rayed his foot and operated on it on June 24, 1970, removing a piece of steel. The claimant was then discharged from the hospital on July 10, 1970, following the surgical removal of the foreign material from his foot. A few days later, on July 14, the claimant was again seen by this doctor for a follow-up examination and treatment. The claimant failed to keep his next appointment with the doctor, scheduled for July 17.

Thereafter, the claimant went to two chiropractors, one in Robstown and one in Corpus Christi. On November 10, 1970, the claimant returned to the orthopedic surgeon who examined him and testified that he was of the opinion that the workman should return to work. The doctor testified:

"I thought that he should resume general physical activity, that this would be favorable for the recovery of function in the foot, and that he should do so within his limits of discomfort, that is, try to relax his activities at all times."

In September the orthopedic surgeon had given Olivarez a physical impairment which applied to the left lower extremity of 10%. On cross-examination Olivarez testified as follows:

"Q. Mr. Olivares, you are not telling us here today that you hurt your back in that accident, are you?

A. No.

Q. It was strictly your left foot?

A. The left foot.

Q. And that was what was hurting you, and no other part of your body?

A. At that time, no.

Q. And you didn't fall down?

A. No.

Q. Or twist your back in any way?

A. No."

One of the chiropractors testified that the claimant was unfit on September 29, 1970, to perform labor involving lifting, stooping and bending. This was due to the disc problem in his back. The claimant himself testified that he had been unable to work since the date of the injury. The chiropractor refused, however, to state that the claimant had received a back injury on May 28, 1970.

During the course of the trial the orthopedic surgeon testified that based on his

examination of the claimant on three separate occasions, it was his opinion, based on reasonable medical probability, that the claimant did not sustain an additional injury to his back on May 28, 1970, nor did the injury to his foot on May 28 aggravate the condition in his back.

The jury found that the claimant's injury was confined to his left foot and that he suffered no total loss of the use of the foot beyond July 14, 1970. The jury found that a period of partial loss of use to the left foot began on July 14, 1970, and ended on November 14, 1970. The percentage of partial loss of use during this period was found to be 50%. The trial court's judgment in the amount of $383.10 is based upon the maximum compensation rate of $49.00 per week.

■ We have carefully read the testimony of all the witnesses in an effort to determine whether the findings of the jury are so against the weight and preponderance of the evidence as to be manifestly unjust. In considering appellant's points of error we are required to weigh all the evidence in the case. The evidence supporting the verdict is to be weighed along with all the other evidence in the case, including that which is contradictory to the verdict. The fact that the claimant was unable to perform his work from the date of his injury until the date of trial would not alone establish his incapacity. The duration and extent of disability resulting from injury is at best an estimate by a jury determined from all of the pertinent facts before it. Employers Reinsurance Corporation v. Jones, 195 S.W.2d 810 (Tex.Civ.App.—Beaumont 1946, n. r. e.). After examining all of the testimony, both that supporting the verdict and that mitigating against it, we cannot say that the jury's findings are so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951).

■ The claimant complains of the jury's award of zero to the special issue inquiring "Find from a preponderance of the evidence the reasonable cost of necessary medical expenses incurred by Juan Olivarez to date as a result of his injury of May 28, 1970." The claimant contends that the medical bills of the two chiropractors totalling $327.00 and $308.00 were reasonable and necessary and that the uncontradictory evidence was that these expenses were incurred as a result of the injury.

The Workmen's Compensation Act provides that an employee will not be entitled to recover any amount expended or incurred by him for medical aid unless the association or subscriber shall (1) have notice of the injury and (2) shall have refused, failed or neglected to furnish medical services within a reasonable time. Art. 8306, Sec. 7, Vernon's Ann.Civ.St. The insurance company authorized the treatment by the orthopedic surgeon and the two other medical doctors. These bills were apparently paid by the insurance company. The doctors' treatment of the appellant's injuries had been authorized. On the other hand, there was no evidence in the record that the insurance company had authorized the treatment by the two chiropractors. Reviewing all of the testimony, we do not find any evidence in the record that the appellee insurance company refused, failed or neglected to furnish the appellant with adequate medical care and treatment following his injury. We hold that the insurer was not liable for the services rendered by the two chiropractors under the facts established. Therefore, the jury was warranted in returning its verdict as such. Few v. Charter Oak Fire Ins. Co., 463 S.W.2d 424 (Tex.Sup.1971).

We have carefully considered all of appellant's points and they are overruled. Judgment of the trial court is affirmed.